UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

SEVEN HANOVER ASSOCIATES, LLC, :
WATER/PEARL ASSOCIATES, LLC, and
BUILTLAND, LLC, :

                Plaintiffs, :    04 Civ. 4143 (PAC)

     -against- :
                                  ORDER
JONES LANG LASALLE AMERICAS, :
INC.,
                                  :
                Defendant.
                                  :
-------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Seven Hanover Associates, LLC, Water/Pearl Associates, LLC, and Builtland, LLC, (collectively "Plaintiffs"), are owners of large commercial real estate buildings in Manhattan. Plaintiffs hired Defendant Jones Lang Lasalle Americas, Inc. ("JLL") to manage and lease out Plaintiffs' properties on their behalf from March 1997 until June 2003, when Plaintiffs had a change of management. One year later, Plaintiffs instituted this action alleging, in a 51-page complaint, seven claims for relief:

      (1) Fraudulent Misrepresentation
      (2) Breach of Fiduciary Duty
      (3) Breach of Contract
      (4) Unjust Enrichment
      (5) Conversion (brought by Plaintiff Builtland, LLC)
      (6) Negligent Supervision and Negligent Retention
      (7) Trespass to Chattel

The prayers for relief include actual, consequential, and punitive damages, disgorgement of profits, return of all monies paid, and the imposition of a constructive trust. For good

measure, Plaintiffs' prayer for relief also includes eighth and ninth claims for relief seeking, respectively, consequential damages for their fraudulent concealment claim, and an accounting of all monies paid to Defendants, presumably as part of their faithless servant claim. (Compl. ¶¶ 265 (H) and (I).) These two claims for relief are alleged only in the prayer and not elsewhere in the 265 separate paragraphs of allegations.

JLL now moves for partial summary judgment on Plaintiffs' third claim for relief (breach of contract) and for complete summary judgment on all other claims. JLL also seeks dismissal of Plaintiffs' request for equitable remedies, quasi-contractual remedies, punitive damages, and the exclusion from damage calculations of any amounts charged by JLL but passed to (and paid by) the tenants in Plaintiffs' buildings. Finally, JLL seeks summary judgment on a counterclaim for breach of a brokerage agreement.

At its heart, this is an action for breach of contract, and the Court dismisses all non-contractual claims, including claims sounding in tort and quasi-contract, and claims for equitable remedies and punitive damages. With respect to the breach of contract claims and the counterclaim, JLL's motion is denied.

## SUMMARY OF FACTS[1]

In February 1997, Plaintiffs and Defendant entered into property management contracts (the "management agreements") for properties at 335 Madison Avenue and Seven Hanover Square. Defendant JLL also entered into a contract with Plaintiffs to provide leasing services for the Seven Hanover property (the "leasing agreement"). The Plaintiffs provided space to the Defendant's employees so that management and leasing services would be provided on-site. The contracts required JLL to do:

---

[1] The following facts are derived from Plaintiffs' Complaint and are supplemented by Defendant JLL's motion for partial summary judgment and Plaintiffs' opposition to that motion.

> all things necessary, required or desirable for the proper and efficient management, operation, and maintenance of the Properties, in a manner comparable to that of other property managers or comparable major modern midtown Manhattan first class office buildings.

Management Agreements ("Mgmt. Agts.") ¶ 4.1(b). The contracts also specified that with regard to employment decisions:

> [a]ll matters pertaining to the selection, direction, employment, supervision, compensation, promotion and discharge of such personnel are the sole responsibility of [JLL], [and] all costs of such personnel (including compensation, fringe benefits, insurance and taxes) shall be reimbursable to [JLL] as set forth in Section 10.1 hereof.

Id. ¶ 4.2. The contracts contained no exclusivity provision requiring Defendant's employees to work solely for Plaintiffs and their properties.

JLL provided services to Plaintiffs during the contractual period with relatively little interruption or complaint for approximately six years. In 1998, Plaintiffs exercised their right to audit JLL's expenses. As a result, the reimbursable costs for JLL employees were re-negotiated and the amount Plaintiffs paid to JLL for employee expenses reduced.

The parties renewed the contracts in 1999, and the renewed contracts were nearly identical in all respects to the original agreements except that the termination dates were extended until December 31, 2000. Further, the agreements provided for automatic renewal of both contracts until one party gave notice of termination.

In 2003, after Plaintiffs underwent an ownership change, Plaintiffs terminated the management contracts with JLL, and replaced them with a new management and leasing team. One year later, in June 2004, Plaintiffs instituted this action alleging a broad array of wrongs including mismanagement of personnel, improper diversion of resources, destruction of property, and assorted other claims of bad faith, fraud, disloyalty, and unfair dealing.

The heart of the complaint is that JLL took advantage of the free space it was allocated and overcharged for its services. Specifically, Plaintiffs allege that JLL loaded up the space that it occupied in Plaintiffs' building with employees and equipment, charged the full costs of those resources to the Plaintiffs, and then used those resources to attend to other clients' business. Plaintiffs claim that JLL hired employees, charged Seven Hanover for the full cost of their employment, and then dispatched them to work on other properties—not belonging to Plaintiffs—that Defendant managed. Plaintiffs also claim that Defendant grossly overstated the number of employees, number of telephone lines, and amount of office space, office supplies, and computer equipment necessary to manage Plaintiffs' properties, and charged Plaintiffs for the overstated amounts. In so doing, Plaintiffs argue that they were billed for the full cost of building Defendant's infrastructure and establishment, which was then used to support Defendant's other management endeavors. Plaintiffs also claim that Defendant purchased supplies and services from two companies, Site Stuff and LPI Service Corporation ("LPISC"), in which it had invested or had some other profit-bearing arrangement, without disclosing the relationship to Plaintiffs. As a result, Plaintiffs claim that Defendant (in addition to the other claims of over-billing) also exacted secret profits from these undisclosed relationships.

These allegations lead directly to claims sounding in contract, but in addition to contractual claims, Plaintiffs attempt to cast the allegations in a light which might also give rise to claims of tort and quasi-contract. They also pray for equitable relief, the return of all payments, imposition of a constructive trust, and punitive damages.

In response to Plaintiffs' assertions, Defendant denies any wrongdoing, argues that its behavior was not improper, and contends that all of its actions were explicitly

4

authorized by the broad language of the management and leasing agreements. Defendant also contends in a counterclaim that it is entitled to receive the second of two commission payments per the terms of its leasing agreement with Plaintiffs. Plaintiffs withheld the second commission, after paying the first, once they filed suit in this action.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the pleadings demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial" in order to survive the summary judgment motion; otherwise the case may be resolved as a matter of law. Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court reviews the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir.1998).

### II. Analysis

#### A. The Tort Claims

JLL submits that Plaintiffs' alleged breach of contract claims cannot also masquerade as tort claims, including fraud, breach of fiduciary duty, conversion, negligent supervision, negligent retention, and trespass to chattel. Indeed, it is well-settled under New York law that "a simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated. This legal duty

5

must spring from circumstances extraneous to, and not constituting elements of, the contract." Macmillan, Inc. v. Fed. Ins. Co., 764 F. Supp. 38, 41 (S.D.N.Y. 1991) (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987)).

With regard to the management functions, the complaint—stripped to its bare bones—alleges that JLL had more people and more resources charged to the Plaintiffs than it should have. Plaintiffs contend it should have paid only for those employees working 100% of the time for Plaintiffs, and should have paid only for those resources (computers, telephones, office space) used exclusively for Plaintiffs' benefit. In other words, Plaintiffs should pay only for JLL employees and equipment devoted entirely to managing Plaintiffs' properties.

As to the leasing function, the JLL employees' salaries were not paid by Plaintiffs. Instead, the employees were paid commissions, earned by negotiating leases, which had to be approved by Plaintiffs before they became effective. Here, the allegation is that JLL assigned more people to this function than necessary to lease out Plaintiffs' properties. These "surplus" leasing employees used their time to lease out properties not owned by Plaintiffs. The harm alleged here is that too much of Plaintiffs' space, time, and money was taken up by these extra leasing employees, who requisitioned equipment, phones, fax machines, and computers at Plaintiffs' expense.

Plaintiffs' other allegations concern JLL's dealings with its affiliates, LPISC and Site Stuff, without full disclosure that they were JLL profit centers, and an allegation that at the end of the contractual relationship, JLL destroyed documents and equipment which disclosed its misdeeds.

Viewing the allegations in light of the contractual language defining the scope of JLL's authority, the Court finds that the parties' relationship is governed by the several

6

contracts that they entered into. Each of the wrongs alleged in the complaint is said to violate the contracts. To the extent that the Defendant owes any duties to Plaintiffs, the duties arise from the contracts. Plaintiffs quote extensively from JLL's code of ethics and from the Real Estate Board of New York's code of conduct in an attempt to find duties independent of the contract. (Compl. ¶¶ 80-87.) The contractual relationship—and the duties arising therefrom—are not changed in the slightest by the extended quotations of these platitudes. Bromides cannot alter the terms agreed upon by the contracting parties, nor do they alter the parties' intent with respect to the meaning of the contractual language. They certainly do not create a duty apart from the contracts and they do not create a fiduciary relationship between the parties. Since Plaintiffs' tort claims are based on the same factual allegations and same alleged duties as the breach of contract claim, and because there are no duties independent of the contract, the non-contractual claims must be dismissed.

Defendant's obligations to Plaintiffs with respect to its management and leasing functions are specifically delineated in the contract. (Mgmt. Agts. ¶¶ 4.1-4.2.) The contracts provide broad latitude to do "all things necessary, required, or desirable" to efficiently manage the properties (Mgmt. Agts. ¶ 4.1(b)) and further provide specific language about the parties' relationship with respect to billing and employee management, allowing JLL discretion in "all matters pertaining to the selection, direction, employment, supervision, compensation, promotion, and discharge" of employees, (Mgmt. Agts. ¶ 4.2), and permitting them to seek reimbursement for "all costs of such personnel." (Mgmt. Agts. ¶ 4.2.) Indeed, a review of the Plaintiffs' response to Defendant's 56.1 Statement refers repeatedly to the contractual relationship that exists between the parties. (<u>See</u> Pl. Counter-Statement of Disputed Material Facts Pursuant to

7

Rule 56.1).² The contract here unequivocally defines the parties' relationship. The square application of New York law requires that tort claims not substitute for breach of contract claims. With regard to the alleged wrongs here, the Defendant had no duties other than those specified in the contract. To the extent that factual issues remain about whether, and to what extent, the Defendant overstaffed or over-resourced its business at Plaintiffs' expense, those issues must be resolved by evaluating the intent of the parties and the scope of the contractual language.

### B. The Faithless Servant Claim

The "faithless servant" claim, like the tort claims, requires the existence of a fiduciary duty—independent of contractual obligations—owed by Defendant to Plaintiffs. Since there is no such duty owed, there is no legal basis for the application of the doctrine. In the Second Circuit, the appropriate relief for a successful faithless servant claim requires that the offending servant return <u>all</u> payments to the wronged master, not just reimbursement for expenses incurred as a result of the faithless actions. <u>Phansalkar v. Anderson Weinroth & Co.</u>, 344 F.3d 184, 200 (2d Cir. 2003) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary") (quoting <u>Feiger v. Iral Jewelry, Ltd.</u>, 41 N.Y.2d 928, 929 (1977)).

Applying these elements of the faithless servant claim to the facts in this case would lead to a completely unjust result. Putting aside the reality of both the law and the facts, presupposing the existence of an independent duty, and assuming for the moment that JLL did inappropriately overcharge Plaintiffs for additional staffing and resources

---

² At a minimum, Plaintiffs refer to the contractual relationship between the parties in their responses to Defendant's 56.1 Statement at ¶¶ 2, 5, 6, 7, 9, 10, 13, 19, 22, 24, 25, 27, 28, and 37.

(which Plaintiffs admittedly passed on—at least in part—to their tenants)[3], finding the faithless servant doctrine applicable here would result in a totally unjustified windfall for the Plaintiffs. They would have experienced no direct fiscal harm and yet they would recover all amounts paid to JLL, not just the purported overcharges. Essentially, Defendant would have provided six years of business services (each year of which Plaintiffs met their business goals, and each year of which was profitable for Plaintiffs) for free. Nothing in the allegations of the Complaint or in the applicable law could justify this result.

### C. Fraudulent Misrepresentation

JLL moves for summary judgment on Plaintiffs' fraudulent misrepresentation claim. The allegations surrounding this claim are covered by the contract dispute and as with the other tort claims, there is no independent duty on which to base this claim. Accordingly, the motion is granted and the claim is dismissed.

### D. Equitable Remedies

Plaintiffs' claims for equitable remedies, including unjust enrichment, constructive trust, and restitution, are also dismissed. Under New York law, equitable remedies are inappropriate when remedies at law are available under an existing contract. Goldman v. Met. Life Ins. Co., 5 N.Y.3d 561, 572 (2005); see also Petrello v. White, 412 F. Supp. 2d 215, 233 (E.D.N.Y. 2006) ("New York Courts and the Second Circuit have consistently held 'that the existence of a written agreement precludes a finding of unjust enrichment.'") (quoting In re First. Cent. Fin. Corp., 377 F.3d 209, 214 (2d Cir. 2004)).

---

[3] See Transcript of Deposition of Howard Milstein, Nov. 9, 2005, at 32:7-15; see also Expert Report of Mitchell Gartenberg, CPA, at 4-6 (explaining, in his analysis of Plaintiffs' expert's damages report, that "Plaintiffs have already recovered from [their] tenants, through base rent and operating expense escalations, a substantial portion of the costs paid to JLL for the period from May 1997, the inception of the relationship, until the termination of JLL as Managers in June 2003. . . . It is inappropriate for the Plaintiffs to see reimbursement a second time for the same costs").

More specifically, recovery in quasi-contract is available when the recovery sought arises from benefits conferred outside the terms of the contract, but it is not available where, as here, the parties' contract governs the dispute at issue. Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 594 N.Y.S.2d 144, 146 (App. Div. 1993); Hotel Aquarius B.V. v. PRT Corp., No. 92 Civ. 4498 (MBM), 1992 WL 391264, at *5 (S.D.N.Y. Dec. 22, 1992).

With regard to the equitable remedies at issue in this case, Plaintiffs claim that they are entitled to recover the profits JLL reaped—using assets paid for entirely by Plaintiffs—from its management of other client's properties. Plaintiffs argue that under such circumstances, the profits sought via equitable remedies are not governed by the management agreements, since the agreements relate only to Plaintiffs' properties and not to the properties of JLL's other clients. This argument is not persuasive.

The contracts between Plaintiffs and Defendant contain specific language about compensation, reimbursement, and the nature of the billing relationship. The Plaintiffs' claim will stand or fall on the language of the contract which squarely governs the dispute at issue; a resort to equitable remedies is therefore inappropriate.

### E. Punitive Damages

As with Plaintiffs' other non-contractual claims, their claim for punitive damages is also dismissed. It is well-settled that punitive damages are not available in a pure breach of contract action absent the existence of an independent tort, some resulting "public harm," or behavior akin to criminal conduct. New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316-17 (1995) ("[T]he threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages [in a breach of contract action] is to identify a tort independent of the contract."); see also Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003) ("Of course, it is hornbook law that punitive damages are

unavailable in ordinary contract actions. However, in New York, plaintiffs may sometimes obtain punitive damages in actions presenting mixed issues of contract and tort."); Rocanova v. Equitable Life Assurance Soc'y of the U.S., 83 N.Y.2d 603, 613-16 (1994) ("Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights."); Walker v. Sheldon, 10 N.Y.2d 401, 405 (1961) ("[T]here may be a recovery of [punitive] damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability."). The facts of this case do not implicate any of the conditions necessary for the award of punitive damages. The claim is dismissed.

### F. The Breach of Contract Claims

Defendant argues that several of Plaintiffs' breach of contract claims should also be dismissed because the evidence demonstrates that JLL performed in accordance with the contracts. Specifically, Defendant asserts that Plaintiffs' claims regarding JLL's allocation of employees, calculation of costs, use of Site Stuff and LPISC, and supervision and retention of employees are explicitly authorized by the language of the management agreements which—as the Court has already noted—provide broad discretion for JLL to do "all things necessary, required or desirable" for the management of the properties. (Mgmt. Agts. ¶ 4.1(b))[4]

The Court does not find this argument persuasive. The management agreements at issue permit JLL to do "all things necessary" for the proper and efficient management of the properties, but they do not contemplate that JLL can do "anything at all" in the management of the properties. On the limited facts before it on this motion, the Court is

---

[4] As previously mentioned, the agreements also provide that JLL is to have sole responsibility for "[a]ll matters pertaining to the selection, direction, employment, supervision, compensation, promotion and discharge of . . . personnel," and that "all costs of such personnel shall be reimbursable to [JLL]." (Mgmt. Agts. ¶ 4.2.) See also discussion of contractual language supra Part II.A.

11

not convinced that all of the actions allegedly taken by JLL under the auspices of the contract were within the contemplation of the parties at the time the agreements were made. Genuine issues of material fact remain about the exact actions JLL took, the actual staffing and resourcing needs of Plaintiffs, and about the intent of the parties as manifested in the management agreements. It would be inappropriate to grant partial summary judgment on the breach of contract claims when genuine issues of material fact remain for trial. Summary judgment is therefore denied as to the breach of contract claims.

### G. The Counterclaim

Defendant also contends that the Court should grant judgment as a matter of law on its counterclaim, which seeks to require Plaintiffs to pay the second of two contractual brokerage commission payments. Plaintiffs paid the first commission, but withheld the second payment after filing suit in the instant case.

The Court denies the Defendant's request for summary judgment in favor of its counterclaim. We have already held that factual questions exist about the intent of the parties with respect to their contractual language on billing and payment. To the extent that the remaining factual issues will inform the adjudication of the counterclaim—even absent the faithless servant doctrine—it would be inappropriate to reach the legal merits of the claim without first resolving the underlying factual disputes.

## CONCLUSION

Genuine issues of material fact remain with regard to Plaintiffs' claims for breach of contract and Defendant's counterclaim, therefore, summary judgment is DENIED as to

those claims, but GRANTED in all other respects. The parties should meet and confer to determine what discovery remains to be conducted, and should contact the Court no later than Wednesday, February 27, 2008, to schedule a pre-trial conference. The Clerk of Court is directed to terminate this motion.

Dated: New York, New York
       February 19, 2008

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge